**COMMUNITY HEALTH PARTNERS, INC. and Reservoir Park Health Services, Inc. d/b/a Center Care Plaintiffs**

v.

**COMMONWEALTH OF KENTUCKY, ex rel. George NICHOLS III, Commissioner of Insurance Defendant**

No. CIV.A. 1:96–CV–202–M.

United States District Court,
W.D. Kentucky,
Bowling Green Division.

June 2, 1998.

Shaun T. Orme, Julie Mix McPeak, Kentucky Dept. of Insurance, Frankfort, KY, for Commonwealth of Kentucky, George Nichols, Commissioner of Insurance.

Quinten B. Marquette, Bell, Orr, Ayres & Moore, Murry A. Raines, English, Lucas, Priest & Owsley, Bowling Green, KY, Daniel M. Mulholland, III, Harty, Springer & Matern, Pittsburgh, PA, for Community Health Partners, Inc., Reservoir Park Health Services, Inc. d/b/a Center Care.

## MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the Court on Cross–Motions for Summary Judgment by Plaintiffs, Community Health Partners, Inc. [hereinafter "Community Health"] and Reservoir Park Health Services, Inc. d/b/a Center Care [hereinafter "Center Care"], and Defendant, Commonwealth of Kentucky, ex rel. George Nichols III, Commissioner of Insurance

[hereinafter "Defendant"]. [DN32] [DN33] Plaintiffs seek declaratory and injunctive relief based on allegations that Kentucky's "Any Willing Provider" law, KRS 304.17A–110(3), is pre-empted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* [hereinafter "ERISA"]. The Court's jurisdiction over this matter is based on federal question pursuant to 28 U.S.C. § 1331.

## I. STATEMENT OF FACTS

Plaintiffs, Community Health and Center Care, are networks of select health care providers—physicians, hospitals and others—which contract to provide health care services to beneficiaries of health care plans, either directly or through insurance companies and health maintenance organizations [hereinafter "HMOs"].[1] Community Health and Center Care contract with health care providers to participate in their networks.[2] Providers agree to provide health care services at predetermined rates, which the providers are usually willing to discount in return for the guarantee of a high volume of patients. Plaintiffs then market their provider networks to consumers—either directly or through employers, insurance companies, HMOs and other groups—and offer consumers economic incentives to patronize their network providers.

Enacted in 1994 as part of a comprehensive legislative effort to reform the state's health care industry, Kentucky's "Any Willing Provider" [hereinafter "AWP"] law states that

[h]ealth care benefit plans shall not discriminate against any provider who is located within the geographic coverage area of the health benefit plan and is willing to meet the terms and conditions for participation established by the health benefit plan.

---

**1.** An HMO is an organization in which the HMO itself and/or physicians participating in the HMO accept contractual responsibility for the delivery of certain health care services to HMO members in exchange for an advance capitation payment. *See generally* Barry R. Furrow et al., *Health Law* § 11–11 (1995). In this manner, the HMO assumes financial risk similar to that assumed by a traditional insurance company.

**2.** Community Health is operated by a for-profit corporation owned by physicians and Commonwealth Health Corporation, which operates the Medical Center in Bowling Green, Kentucky. Center Care is owned by Commonwealth Health Corporation.

KRS 304.17A–110(3). As used in the statute, the term "health benefit plan" means

> any hospital or medical expense policy or certificate; nonprofit hospital, medical-surgical, and health service corporation contract or certificate; a health benefit plan offered by a provider-sponsored integrated delivery network; a self-insured plan or a plan provided by a multiple employer welfare arrangement, to the extent permitted by ERISA; health maintenance organization contract; and standard and supplemental health benefit plan as established in KRS 304.17A–160.

KRS 304.17A–100(4)(a).

At the time of the AWP statute's enactment, Center Care had an exclusive agreement with an affiliate of CHA HMO, Inc. [hereinafter "CHA"] for the provision of health care providers for certain CHA products. CHA is a licensed Kentucky HMO. During the fall of 1996, Community Health attempted to negotiate an exclusive agreement with CHA for provision of a different managed care product. Community Health was unable to solidify an agreement with CHA after Defendant determined that the CHA/Community Health agreement would violate the AWP law. Defendant maintained that the CHA/Community Health agreement would violate the AWP statute by preventing an excluded provider, who was otherwise willing to accept the terms and conditions of the CHA/Community Health agreement, from providing services to CHA enrollees.

In response, Plaintiffs filed the present action. Plaintiffs maintain that Kentucky's "Any Willing Provider" law threatens their existence by effectively preventing them from contracting with any entity mentioned in KRS 304.17A–100(4) for the provision of selective provider services. Plaintiffs ask the Court to find the AWP preempted by ERISA and to enjoin Defendant from enforcing the statute.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since the Parties do not dispute the material facts in this case, summary judgment is an appropriate means of resolving the legal issues underlying this dispute.

## III.

Enacted in 1974, ERISA is a comprehensive statute which subjects employee benefit plans, including pension and welfare plans, to federal regulation. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Welfare benefit plans include programs providing benefits to employees for "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death," whether these benefits are provided "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1); *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Thus, ERISA applies both to self-insured employee health benefit plans as well as to plans that purchase health insurance for their participants.

Initially, Defendant challenges whether Plaintiffs have standing to bring the present action. Having rejected this argument in a previous Order, the Court finds no need to further address the standing issue.

### A. ERISA Preemption Principles

ERISA supersedes any and all State laws insofar as they "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). However, Congress imposed a limit on ERISA preemption by including a "saving" clause in the Act's provisions. The saving clause exempts from preemption "any law of any State which regulates insurance." 29 U.S.C.

§ 1144(b)(2)(A). Therefore, the Court must first determine whether the AWP law is preempted by ERISA because the law "relates to" an employee benefit plan. If the AWP law "relates to" an employee benefit plan within the meaning of ERISA, the Court must next ascertain whether the law is "saved" from preemption as a law which regulates insurance.

### 1. *"Relates To" Analysis*

■ As previously mentioned, ERISA preempts any and all State laws that "relate to" an employee benefit plan. The Supreme Court has explained that a state law "relates to" an employee benefit plan for purposes of ERISA "if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 97, 103 S.Ct. 2890.

### a. *"Reference to" an ERISA Plan*

■ It is undisputed that the Kentucky statute makes an express reference to ERISA plans. Plaintiffs argue that this reference, in itself, is sufficient to trigger preemption. To support this argument, Plaintiffs rely on *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). In *Greater Washington Bd. of Trade,* the Supreme Court considered whether ERISA preempted a state workers compensation law which provided that

> [a]ny employer who provides health insurance coverage for an employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this chapter.

*Id.* at 128, 113 S.Ct. 580. Plaintiffs emphasize the statement in *Greater Washington Bd. of Trade* that the statute "specifically refers to welfare benefit plans regulated by

ERISA and on that basis alone is pre-empted." *Id.* at 130, 113 S.Ct. 580.

Plaintiffs also argue that the AWP statute "refers to" employee benefit plans because it directly regulates self-insured insurance plans. Plaintiffs point out that, by its terms, the Kentucky statute applies to "self-insured or multiple employee welfare arrangements, to the extent permitted by ERISA." Plaintiffs reason that since ERISA allows for limited state regulation of multiple employee welfare arrangements[3] [hereinafter "MEWAs"] but not self-insured ERISA plans, the Kentucky legislature meant the phrase "to the extent permitted by ERISA" to apply only to MEWAs. Therefore, Plaintiffs' argument continues, the AWP statute specifically "refers to" ERISA plans because it explicitly subjects self-insured ERISA plans to its provisions.

Although Kentucky's AWP law does explicitly mention self-insured employee benefit plans and MEWAs,[4] the Court rejects that mere reference alone is sufficient to trigger preemption. First, the Sixth Circuit specifically rejected this proposition in *Thiokol Corp. v. Roberts,* 76 F.3d 751, 759 (6th Cir. 1996) (holding that mere reference is not enough to trigger preemption; rather, law must clearly have a significant effect on employee benefit plans), *cert. denied,* —— U.S. ——, 117 S.Ct. 2448, 138 L.Ed.2d 206 (1997). Moreover, the Supreme Court recently clarified its "reference to" analysis by articulating two situations where "reference to" an employee benefit plan is sufficient to result in preemption. *See California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997).

First, the Supreme Court clarified that state law makes a "reference" to ERISA

---

3. 29 U.S.C. § 1144(b)(6)(A)(ii) allows States to regulate certain MEWAs to the extent state law is "*not inconsistent with*" ERISA.

4. The fact that the Kentucky legislature chose to allow for regulation of MEWAs and self-insured plans "to the extent permitted by ERISA" suggests that the legislature was well aware of the preemptive force of ERISA. As noted by Defendant, the phrase appears merely to restate the "deemer clause" by exempting self-insured ERISA plans from the scope of the AWP statute.

The "deemer clause" prevents a state law from "deeming" an employee benefit plan to be an insurance company for the purpose of any law purporting to regulate the business of insurance. 29 U.S.C. 1144(b)(2)(B). The deemer clause thus effectively prevents states from subjecting self-insured plans to state insurance regulation. On the other hand, insured plans—plans that purchase insurance—are subject to state laws regulating the insurance industry. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

where the law acts "immediately and exclusively" upon ERISA plans. *Id.* (citing *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). In *Mackey,* the statute at issue singled out ERISA employee welfare benefit plans for exemption from otherwise generally applicable state garnishment procedures.[5] *Id.* at 829, 108 S.Ct. 2182. In holding the statute preempted because it "referred to" an employee benefit plan, the Court found significant the fact that the statute *solely* applied to ERISA employee benefit plans. *Id.* In the present case, although the AWP law does explicitly mention self-insured employee benefit plans and MEWAs, it does not act "immediately and exclusively" upon employee benefit plans since not all of the plans defined in the statute are employee benefit plans. Rather, the AWP law generally affects plans or contracts of insurance offered by risk-bearing entities.

Second, the Supreme Court clarified that state law "refers to" ERISA covered plans where the "existence of ERISA plans is essential to the law's operation." *Dillingham,* 117 S.Ct. at 834 (citing *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). In *Greater Washington Bd. of Trade,* the statute in question provided that "any employer who provides health insurance coverage for an employee" must provide "health insurance coverage equivalent to the existing health insurance coverage of the employee" while the employee is receiving or eligible to receive workers compensation benefits. *Id.* at 128, 113 S.Ct. 580. In concluding that the statute was preempted because it "referred to" employee benefit plans, the Court found significant that the statute imposed requirements on employers by reference to ERISA-covered programs. *Id.* at 130–31, 113 S.Ct. 580. Operation of the statute was premised on the existence of an employee health benefit plan. *Id.* at 131, 113 S.Ct. 580.

In *Ingersoll–Rand,* 498 U.S. at 135, 111 S.Ct. 478, the Supreme Court considered whether ERISA preempted an employee's state law cause of action for wrongful discharge. In holding the cause of action preempted, the Supreme Court again relied heavily on the fact that the state law cause of action was premised on the existence of an employee pension plan.

> [T]he cause of action 'allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment.... *[T]here simply is no cause of action if there is no plan.*

*Id.* at 140, 111 S.Ct. 478. [Emphasis added] [Internal citations omitted]

In the present case, on the other hand, the existence of employee benefit plans is not *essential* to the operation of Kentucky's AWP law. By definition, the statute applies to the contracts or "plans" by which certain entities assume financial risk for various health-related occurrences. Although ERISA self-insured employee welfare benefit plans and MEWAs are among the risk-bearing entities referenced in the statute, these ERISA plans are by no means the *only* entities affected by the statute. Moreover, although the non-ERISA entities—such as insurance companies and HMOs—defined in the statute primarily contract directly with insured ERISA plans, they also contract with private individuals and groups not affected by ERISA. *See Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 711 (2d Cir.1993) (noting that [88%] of non-elderly Americans have private health care insurance through [ERISA] plans), *rev'd on other grounds by New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Thus, the health benefit plans defined in Kentucky's AWP law need not necessarily be ERISA plans.

---

5. The Georgia statute barred the garnishment of "[f]unds or benefits of [an]... employee benefit plan or program subject to...[ERISA]." *Id.* at 828, 105 S.Ct. 2380 (quoting Ga.Code Ann. § 18–4–22.1 (1982)).

### b. *"Connection with" an ERISA Plan*

A law that does not "refer to" ERISA plans may still be preempted if it has a "connection with" ERISA plans. *Dillingham*, 117 S.Ct. at 838. Plaintiffs argue that the AWP law has a connection with ERISA plans because the law effectively requires all health benefit plans to include in their provider panels any provider willing to accept the terms and conditions offered by the plan. Plaintiffs contend that the law thus effectively mandates the benefit structure and administration of insured ERISA plans by precluding them from structuring their plans around preferred provider arrangements. In this regard, Plaintiffs argue that Kentucky's AWP statute is similar to the mandated benefit law in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

In *Metropolitan Life*, the Court considered whether a state law mandating mental health benefits for certain types of insurance coverage "relates to" ERISA plans. *Id.* at 731–32, 105 S.Ct. 2380. The statute at issue specified that minimum mental health benefits be provided all Massachusetts residents insured under a general insurance policy, an accident or sickness insurance policy, or an employee health care plan covering hospital and surgical expenses. *Id.* at 727, 105 S.Ct. 2380. The Court held that the mandated benefit law "relates to" ERISA plans because the statute bore "indirectly but substantially" on all insured employee benefit plans by effectively requiring the plans to purchase the mental health benefits when purchasing a certain kind of common insurance policy. *Id.* at 739, 105 S.Ct. 2380.

Courts have applied this same rationale to hold a state law preempted if it restricts the choices of a benefit plan regarding the plan's administration, structure, or benefits. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (ERISA preempts state antisubrogation statute restricting structure of ERISA plans); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 505, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (ERISA preempts state statute insofar as statute prevents ERISA plans from decreasing benefits); *United Wire Metal & Machine Health & Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1193

(3rd Cir.) (state statute may be preempted if statute's effect is to "dictate or restrict the choices of ERISA plans with regard to their benefits, structure, [or] reporting and administration"), *cert. denied*, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993). "By preventing states from imposing divergent obligations, ERISA allows each employer to create its own uniform plan, complying with only one set of rules (those of ERISA) and capable of applying uniformly in all jurisdictions where the employer might operate." *Rosario–Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 123 (1st Cir.1995).

> Congress intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656–57, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. 478).

In response, Defendant maintains that the AWP law does not have a "connection with" ERISA because the Kentucky statute is a law of general applicability in an area traditionally regulated by the state and has only an indirect economic effect on ERISA plans. Moreover, Defendant argues, the statute does not bind plan administrators to a particular choice regarding the core administrative functions and responsibilities of ERISA plans. To support this argument, Defendant relies primarily on more recent Supreme Court pronouncements which define the "outer limits" of ERISA preemption. The "recent Supreme Court pronouncements recognize the impossibility of extracting meaningful limits from the statutory language alone, and reject such 'uncritical literalism' in favor of analyzing 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive'...[t]hese opinions also recognize the

importance of analyzing the purposes of the challenged legislation and the nature of the effect of such legislation on ERISA plans." *American Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*, 973 F.Supp. 60 (D.Mass.1997).

In *Travelers*, 514 U.S. at 650, 115 S.Ct. 1671, the Supreme Court considered whether ERISA preempted a New York statute which required hospitals to collect surcharges from patients whose services were reimbursed by commercial health insurance and which also required HMOs to pay varying surcharges based on their number of Medicaid members. The purpose of the statute was to raise the cost of commercial insurance for carriers other than Blue Cross and Blue Shield, and to shift market shares back to economically threatened Blue Cross and Blue Shield plans. *Id.* at 658–59, 115 S.Ct. 1671. The Supreme Court rejected that the statute directly affected plan benefits or administration. Rather, the Court's focus was on whether the statute indirectly affected the economic choices made by plan administrators to such an extent as to trigger preemption. *Id.* at 659, 115 S.Ct. 1671.

In holding the statute not preempted, the Supreme Court reiterated that "[p]reemption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Id.* at 661, 115 S.Ct. 1671 (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992)). The Court also noted that "nothing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation," and that "laws with only an indirect economic effect on the relative costs of various health insurance packages... are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." *Id.* at 661–62, 115 S.Ct. 1671.

Even more recently, the Supreme Court rendered two decisions further expounding on the *Travelers* rationale. In *California Division of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the Supreme Court held that a California "prevailing wage" statute, which had the effect of regulating an apprenticeship plan that was an employee welfare benefit plan, did not "relate to" employee benefit plans within the meanings of ERISA. As in *Travelers*, the Court looked to the objectives of ERISA and the nature and effect of the state law on ERISA plans. *Id.* at 840–842. Again, the Court's analysis started with the assumption that the historic police powers of the state would not be superseded absent clear indication that was Congress' intent. *Id.* at 840. The Court found that the indirect influence of the surcharge did not "preclude uniform administrative practices or the provision of a uniform interstate benefit package if a plan wished to provide one." *Id.*

In *De Buono v. NYSA–ILA Medical & Clinical Services Fund*, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the Supreme Court held that ERISA did not preempt New York from imposing a gross receipts tax on medical centers which were owned and operated by an ERISA-covered employee benefit plan. The Court held that the New York law did not "dictate the choices facing ... ERISA plans." *Id.* at 1752. Rather, the Supreme Court found that the statute was "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of [ERISA]." *Id.*

The Court finds it significant that these recent cases defining the "outer limits" of ERISA preemption clearly establish that the Supreme Court has not disavowed its earlier decisions. As previously noted, in reaching its decision in *Travelers*, the Supreme Court distinguished the surcharge statute from the mandated benefit laws at issue in *Metropolitan Life* and from laws which preclude uniform administrative practices of ERISA plans. *Id.* at 657–58, 662–63, 115 S.Ct. 1671. Based on this fact, the issue presently before the Court appears to rest on whether Kentucky's AWP law can be likened to a mandated benefit law or a law which affects uniform plan administration, or whether it is more akin to the statutes at issue in *Travelers, Dillingham* and *De Buono*—statutes of general applicability with only an indirect economic effect on employee benefit plans.

The only published post-*Dillingham* and *De Buono* case involving an any willing pro-

vider law is *American Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*, 973 F.Supp. 60 (D.Mass.1997). In *American Drug*, the district court held that a state AWP law prohibiting the formation of restricted pharmacy networks did not "relate to" ERISA.[6] *Id.* at 69. In reaching its decision, the court rejected the defendants' argument that the statute "mandates employee benefit structures or administration." In this regard, the court noted that "[there] is no question that the Act's mandates are not directly applicable to ERISA plans, that is ERISA plans are not 'carriers' and so may themselves offer pharmacy networks without complying with the Act's requirements." *Id.*

Dismissing the argument that the AWP statute mandated benefits or plan administration, the *American Drug* court then proceeded with a *Travelers/Dillingham/De Buono* type analysis. The court started with the presumption that Congress did not intend to supplant the AWP law because the law fell within an area of traditional state regulation—the health care and insurance industries. *Id.* at 65. The court also compared the objectives of ERISA with those of the state law to see if the state law frustrated ERISA's goal to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 66 (quoting *Travelers*, 514 U.S. at 657, 115 S.Ct. 1671.)

The *American Drug* court noted that the Massachusetts law "in no way interferes with eligibility determinations, benefit calculations, disbursements, fund monitoring or recordkeeping." *Id.* at 67. The court also noted that "the establishment and operation of provider networks [does not] seem the type of activity which could become 'nationally uniform' absent state interference. Selection of providers is inherently a local matter which involves a variety of regional factors, and it can hardly be expected that it could achieve the same national uniformity as standards for processing claims or making disbursements." *Id.* Moreover, the court noted that selection of provider networks is not a traditional function of ERISA plans, and

"surely was not a function Congress contemplated in enacting ERISA." *Id.* The *American Drug* Court concluded that the involvement of ERISA plans in such activities as the establishment and operation of provider networks should not extend the scope of ERISA. *Id.*

In the present case, despite the fact that the Court wholeheartedly agrees with *American Drug's* position that not every law affecting plan administration merits preemption, the Court rejects Plaintiffs' argument that Kentucky's AWP does not have a "connection with," and therefore does not "relate to," employee health benefit plans. The Court bases this decision primarily on its belief that the AWP law is more akin to the mandated benefits law at issue in *Metropolitan Life* than to the statutes of general applicability at issue in *Travelers, Dillingham* and *De Buono*. By restricting risk-bearing entities from offering health benefit plans with restricted provider networks, the AWP law effectively mandates the benefit structure of employee benefit plans. Under *Metropolitan Life*, this "mandated benefit" is sufficient to support that Kentucky's AWP statute has a "connection" with employee benefit plans sufficient to trigger preemption.

Initially, the Court relies on dicta in *Metropolitan Life* which refers to mandated provider laws as a type of mandated benefit law regulating the substantive terms of insurance policies. *Id.* at 729, 105 S.Ct. 2380; *see also Stuart Circle v. Aetna Health Management*, 995 F.2d 500, 504 (4th Cir.) (same), *cert. denied*, 510 U.S. 1003, 114 S.Ct. 579, 126 L.Ed.2d 478 (1993). Mandated provider laws require insurers to pay for the services of a particular type of health care provider, even if the terms of the policy provide that payment will be made only to another type of provider. For instance, a typical mandated provider law may provide that, if an insurance policy provides for reimbursement of visual services, an insured entitled to reimbursement under such policy is entitled to reimbursement regardless whether such services are performed by a duly licensed physician or by a duly licensed optometrist. States have enacted these statutes to give

---

6. The Massachusetts statute precluded an insurance carrier from "imposing any agreements terms or conditions on any non-network ... which are more restrictive than those required of any pharmacy in the carrier's restricted pharmacy network." *Id.* at 61.

insured's freedom of choice to seek the services of podiatrist, chiropractors, osteopaths, occupational therapists and nurse midwives, among others. *See generally* Larry J. Pittman, *"Any Willing Provider" Laws and ERISA's Saving Clause: A New Solution For An Old Problem,* 64 Tenn. L.Rev. 409, 452 & nn. 189–90 (1997).

Under the circumstances, the Court finds little practical difference between mandated provider laws and any-willing provider laws:

> A mandated provider law affirmatively mandates that insurers pay specified providers at the same reimbursement as preferred providers despite the nonpreferred status of those specified providers. An any willing provider law requires that preferred status be granted to any provider willing to meet specified terms and conditions. The end result of both types of laws is that the insurer must pay certain providers who are nonpreferred at the same rate as preferred providers. Consequently, the two types of laws are basically the same .... In other words, since both types of laws require that nonpreferred providers be paid at the same rate as preferred providers, it really does not matter whether the nonpreferred provider is a member of the provider list under an any willing provider law or a nonmember under a mandated provider law.

*Id.* at 453 n. 190. As a result of this similarity, Professor Pittman articulates that the dicta in *Metropolitan Life* is strong support for the argument that AWP statutes regulate the substantive terms of insurance policies in the same way as mandated provider laws. *Id.* at 452–53.

Moreover, in its ERISA "relates to" analysis, the Sixth Circuit has looked at whether an allegedly offending statute affects or regulates the relationship between the traditional ERISA entities—the plan, the employer, the plan fiduciaries and the plan beneficiaries. *Thiokol Corp. v. Roberts,* 76 F.3d 751, 755 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2448, 138 L.Ed.2d 206 (1997). Arguably, the state laws at issue in *Travel-*

*ers, Dillingham* and *De Buono* did not regulate the relationship between the traditional ERISA entities. Rather, those laws were laws of general applicability not specifically designed to affect the relationship between the plan, the employer, plan fiduciaries and plan beneficiaries. On the other hand, Kentucky's AWP law regulates the relationship between the principal ERISA entities. By regulating the contracts or "plans" offered by risk-bearing entities, the statute effectively precludes employers with insured ERISA plans from restricting provider networks. This, in turn, enables plan beneficiaries to exercise greater freedom of choice in selecting a provider.

From a practical standpoint, freedom of choice in selecting a personal physician is as important to many insureds as are the policy terms relating to coverage and costs. In this regard, the AWP law differs from general health care regulation regarding provider certification or from general state contract, zoning or tort legislation. Although Kentucky's AWP law does not give plan beneficiaries a *per se* right to select the physician of his or her own choice, the statute does effectively preclude insurer's from arbitrarily limiting provider panels to those providers preferred by the insurer. Thus, the AWP law is aimed at giving insureds greater freedom of choice in selecting a physician. Any law which affects so fundamentally an insureds' ability to select a health care provider of his or her own choice has more than merely an indirect economic effect on the administrative choices of plan administrators. In this respect, the Court notes a qualitative difference between Kentucky's AWP law and the surcharge held not preempted in *Travelers,* the "prevailing wage" law held not preempted in *Dillingham* and the gross receipts tax held not preempted in *De Buono:* the latter truly are laws of general applicability, while the former focuses directly on the relationship between the insurer and the insured.[7]

Based on the foregoing, the Court sees no difference between the Kentucky AWP stat-

---

7. Interestingly, the *American Drug* court recognized that the Massachusetts' AWP law was "an integral part of the relationship between the insurer and insured because it affects the substantive terms of the policy by broadening the range of providers that an insured may choose." *Id.* at 71. Under the circumstances, it seems to some extent contradictory to find that an AWP law fundamentally affects the substantive terms of the policy between the insurer and insured but

ute and the mandated benefits law in *Metropolitan Life*. Kentucky's AWP statute effectively precludes insured ERISA plans from utilizing restricted provider networks. Under the holding of *Metropolitan Life*, the statute thus impermissibly regulates the substantive terms of the plan that an insured ERISA plan can offer its participants. By so doing, the statute bears "indirectly but substantially" on all insured plans. For this reason, the Court holds that Kentucky's AWP statute "relates to" ERISA.

### 2. *"Saving" Clause Analysis*

■ Having concluded that Kentucky's AWP law "relates to" ERISA, it is preempted unless saved by the savings clause. As previously mentioned, ERISA's saving clause expressly exempts from preemption any state law "which regulates insurance." 29 U.S.C. 1144(b)(2)(A). In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740–43, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court articulated a two-prong test for determining whether a law "regulates insurance" within the meaning of the saving clause. First, the Court considered whether the law fit a common-sense definition of insurance regulation. *Id.* at 740–42, 105 S.Ct. 2380. Second, the Court considered three criteria taken from case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15:

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Id.* at 743, 105 S.Ct. 2380.

■ There is a split of authority among courts which have considered whether a state AWP law is "saved" from preemption as a law which "regulates insurance." The Court notes, however, that some of the AWP laws held not "saved" are distinguishable based on their wording. Furthermore, unlike other

that the law does not impact the structure of or have a "connection with" employee health benefit plans.

circuits, the Sixth Circuit has held that it is not necessary for a law to satisfy all three of the McCarran–Ferguson factors in order to be found a law which regulates insurance. *See Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 940 (6th Cir.1997); *accord Cisneros v. UNUM Life Ins. Co.*, 134 F.3d 939, 946 (9th Cir.1998) (determining that the McCarran–Ferguson factors are "simply relevant considerations or guideposts, not essential elements of a three-part test that must each be satisfied for a law to escape preemption.") *Id.* The Court's decision is also influenced by the fact that the AWP statute does not *clearly fail* any of the relevant criteria. With the foregoing in mind, it is this Court's opinion that Kentucky's AWP statute is one of those broad category of laws which "regulate insurance" and thus falls within the scope of the "saving" clause.

### a. *Common sense test*

To satisfy the common sense test, "a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that common law action resulting from bad faith refusal to pay a claim did not pass "common sense" test because the action evolved from general principles of contract and tort law); *see also Williams v. Ashland Engineering Co., Inc.*, 45 F.3d 588, 592 (1st Cir.1995) (concluding that law whose "impact on the insurance industry [was] happenstance" was not directed toward business of insurance).

Plaintiffs maintain that the AWP statute does not pass the common sense test because it is not aimed at the relationship between the insurance company and the policyholder; rather, Plaintiffs argue, the AWP law focuses solely on the relationship between health benefit plans and health care providers. Plaintiffs also argue that the Kentucky statute does not meet the common sense test because, by its express terms, the statute affects self-insured plans and MEWAs and, therefore, is not specifically limited to the insurance industry.[8]

8. As previously mentioned, the Court rejects that the AWP statute applies both to self-insured plans or plans provided by a MEWA. By its plain

Defendant argues that the AWP law passes the common sense test because the law *is* specifically directed toward the insurance industry. The Court agrees. To begin with, the Court rejects that the AWP law is focused on the relationship between health benefit plans and health care providers. The statute establishes that certain plans or contracts through which the regulated entities assume financial risk cannot include restricted provider networks. Therefore, although the statute affects the relationship between insurers and providers, its focus appears to be on the contractual relationship between the insurer and the policyholder. The statute affects specific terms of the insurance policies. *See International Resources v. New York Life Ins. Co.,* 950 F.2d 294, 300 (6th Cir.1991) (statute satisfies common sense test where it affects specific terms of the insurance policy), *cert. denied,* 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). The Court finds this fact, as a matter of common sense, sufficient to establish that the AWP regulates insurance.

Furthermore, the AWP law is located in KRS Chapter 304, which constitutes the Kentucky Insurance Code. *See Stuart Circle Hospital Corp. v. Aetna Health Management,* 995 F.2d 500, 503 (4th Cir.) (Virginia's AWP law satisfies "common sense" test because it is part of state's comprehensive insurance code), *cert. denied,* 510 U.S. 1003, 114 S.Ct. 579, 126 L.Ed.2d 478 (1993). Other than traditional insurance companies, the entities regulated by Kentucky's AWP include 1) HMOs, which are required to get a certificate of authority in KRS 304.38–035; 2) provider-sponsored integrated health delivery networks, which are required to obtain certification pursuant to KRS 304.17A–300; and 3) MEWAs, which ERISA specifically does not exempt from state insurance laws to the extent those state laws do not conflict with ERISA. Each of these entities is regulated by the Kentucky Department of Insurance. Moreover, the regulated entities are recognized as "insurers or insurer-related entities which, for a fee, assume the risk entailed in ensuring that their customers receive health care." *American Drug,* 973 F.Supp. at 70.

terms, the statute is applicable to these entities

Finally, in *Metropolitan Life,* 471 U.S. at 740, 105 S.Ct. 2380, the Supreme Court applied the "common sense" test in a cursory fashion, merely noting that "[t]o state the obvious, [the mandated mental health benefits law] regulates the terms of certain insurance contracts, and so seems to be saved from preemption by the saving clause as a law 'which regulates insurance.' " The summary nature of the Court's analysis and the fact that this is a "common sense" test supports that this is not a determination requiring a formalistic approach. *See also FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (holding that state law precluding insurers from creating a right to subrogation against a claimant's tort recovery passed common sense test because it was "aimed at" insurance industry).

### b. Transferring or Spreading of Risk

The Supreme Court has explained that the term "risk," as used here, refers to the risk of injury for which the insurance company contractually agreed to compensate the insured. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 130, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Plaintiffs maintain that Kentucky's AWP law does not affect the initial apportionment of risk at the inception of the insurance contract. Instead, Plaintiffs argue, the AWP law affects only who must be able to provide services to the insured *after* the risk has been spread.

Defendant, on the other hand, relies primarily on *Stuart Circle Hospital Corp. v. Aetna Health Management,* 995 F.2d 500, 503–04 (4th Cir.1993), where the court held that a state AWP statute has a sufficient effect on the spreading of risk to satisfy the *Metropolitan Life* test:

> If [an insurance company] unreasonably restricts the providers of treatment, even though they meet the insurer's standards, it denies an insured the choice of doctor ... that may best suit the insured's needs, unless the insured is willing and able to pay all or part of the cost of the doctor or hospital that is not preferred by the insurer. This is a restriction of the insured's benefits. By its prohibition against unreasonable restriction of providers, the Virgi-

only "to the extent permitted by ERISA."

nia statute spreads the cost component of the policyholder's risk among all the insureds, instead of requiring the policyholder to shoulder all or part of this cost when seeking care or treatment from an excluded doctor... of his or her own choice.... [T]he statute indirectly affects the insured's choice of provider and the consequent cost to the insured if he or she deems an excluded provider to be better qualified for treatment of a specific illness or accident. In this way it affects the risk that an insured must bear.

The Court agrees with this rationale. Insurance contracts containing "preferred provider" provisions commonly reimburse insureds—by using higher deductibles and/or copayments—at a lower percentage rate for using a provider not on the preferred list. Allowing some insureds to receive treatment from providers not originally on the preferred provider list transfers some of the cost component of the insured's risk to the insurer. In this respect, Kentucky's AWP law is akin to the mandated benefits law in *Metropolitan Life*. Although the statute in *Metropolitan Life* altered the substantive scope of coverage, whereas Kentucky's AWP statute alters a cost component relating to coverage, both statutes effectively transfer some degree of financial risk from the insured to the insurer. *See Texas Pharmacy Ass'n v. Prudential Ins. Co.*, 105 F.3d 1035, 1041 (5th Cir.) (prior version of statute affects spreading of risk because it influenced which costs were ultimately borne by the insurer and which were borne by the beneficiary), *cert. denied*, —— U.S. ——, 118 S.Ct. 75, 139 L.Ed.2d 34 (1997); *American Drug*, 973 F.Supp. at 71 (statute affects spreading of risk "because, by enabling insureds to fill their prescriptions at additional pharmacies, it transfers some of the cost of treatment—which is the risk insured against—from the insured to the carrier").

#### c. Integral Part of Relationship Between the Insurer and the Insured

In *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380, the Supreme Court articulated that mandated-benefit statutes affect the relationship between the insurer and the insured. By imposing "requirements only on insurers, with the intent of affecting the relationship between the insurer and the policyholder,... [mandated benefit statutes relate] to the regulation of the business of insurance as defined in the McCarran–Ferguson Act." *Id.*

> Congress was concerned [in the McCarran–Ferguson Act] with the type of state regulation that centers around the contract of insurance.... The relationship between insurer and insured, *the type of policy which could be issued*, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.' [T]he focus [of the statutory term] was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.' [Emphasis in original]

*Id.* at 743–44, 105 S.Ct. 2380 (Emphasis added) (quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)).

By requiring insurers to accept on their panel any provider willing to accept the terms for participation, Kentucky's AWP statute effectively dictates a substantive term in the contract between the insurer and the insured and, as a result, is integral to that relationship. *See Stuart Circle*, 995 F.2d at 503 ("[T]reatment and cost are important components of health insurance. Regulations governing these components... are integral parts of the relationship between insurer and insured.")

#### d. Limited to Entities Within the Insurance Industry

As previously discussed, Kentucky's AWP regulates traditional insurance companies as well as HMOs, provider-sponsored integrated health delivery networks and MEWAs. Each of these entities is regulated by the Kentucky Department of Insurance. For a fee, each of these entities accepts the risk and responsibility of providing health care benefits to member-insureds. Whatever difference in form or structure that exists as between traditional insurance companies and HMOs, MEWAs, and provider-sponsored integrated health delivery networks is insufficient to establish that Kentucky's AWP law is not limited to entities within the insurance industry. To hold otherwise would require

the Court to recognize form over substance and to refuse to recognize the natural evolution of the health insurance industry. *Cf. SEC v. Variable Annuity Life Ins. Co.*, 359 U.S. 65, 71, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959) (We realize that life insurance is an evolving institution. Common knowledge tells us that the forms have greatly changed even in a generation. And we would not undertake to freeze the concepts of "insurance" ... into the mold they fitted when these Federal Acts were passed.)

On balance, the Court believes that Kentucky's AWP statute is a law properly saved from ERISA preemption. In reaching this decision, the Court recognizes Plaintiffs' argument that the "saving" clause factors should be applied narrowly in accordance with the Supreme Court's analysis in *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) The Court, however, finds the present circumstances distinguishable from those in *Royal Drug*.

*Royal Drug* concerned an antitrust challenge by independent pharmacies to Blue Shield's practice requiring participating pharmacies to accept a $2 payment from insureds and be reimbursed for the remainder of the cost by Blue Shield. Unlike the present case, Blue Shield's policy essentially did not concern policyholders because it did not affect their ability to obtain reimbursement. *American Drug*, 973 F.Supp. at 71. The focus was on the agreement between Blue Shield and participating pharmacies and whether this agreement was part of the business of insurance. *Id.* Because policyholders were basically unaffected by the agreement, the challenged policy clearly did not affect the transfer of risk. *Id.*

In the present case, however, the AWP does affect the ability of policyholders to obtain reimbursement. There is evidence in the record that certain providers have requested admission to health benefit plans from which they have been excluded. If the excluded doctors are admitted to these plans pursuant to the AWP statute, patients who seek treatment from them will be reimbursed at a different rate. Broadening the provider network shifts certain costs of treatment from the insured to the insurer.

Notably, the *Royal Drug* Court "emphasized that 'quite different' questions are raised by the McCarran–Ferguson Act's exemption of the business of insurance from antitrust laws and by its preservation of state regulation of the activities of insurance companies." *See American Drug*, 973 F.Supp. at 72 (citing *Royal Drug*, 440 U.S. at 218 n. 18, 99 S.Ct. 1067 (explaining that the McCarran–Ferguson Act broadly preserves the business of insurance for state regulation while narrowly exempting only "the business of insurance" from the antitrust laws)).

Moreover, commentators have suggested that the recent Supreme Court decision in *United States v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993),[9] also supports a less narrow application of the savings clause in the ERISA context. *See generally* Karen A. Jordan, *ERISA Pre–Emption, Integrating Fabe into the Savings Clause*, 27 Rutgers L.J. 273 (1996) Larry J. Pittman; *"Any Willing Provider" Laws and ERISA's Saving Clause: A New Solution for an Old Problem*, 64 Tenn. L.Rev. 409 (1997). Although *Fabe* is not an ERISA case and courts generally have not applied its holding in the ERISA context,[10] it does reiterate the

9. In *Fabe*, the Supreme Court considered whether a federal priority statute giving the United States first priority preempted a state statute giving the United States fifth priority to the assets of a bankrupt insurance company. *Id.* at 495–96, 113 S.Ct. 2202. The Court held the federal statute preempted to the extent the state law protected the interests of policyholders. *Id.* at 506, 113 S.Ct. 2202. In reaching its decision, the Court focused on the meaning of the phrase "business of insurance" as used in the McCarran–Ferguson Act. *Id.* at 505, 113 S.Ct. 2202. The Court articulated that, by its express language, the McCarran–Ferguson Act broadly reserves to the States the power to enact laws "for

the purpose of regulating the business of insurance," while narrowly exempting from federal antitrust laws only those laws constituting the "business of insurance." *Id.*

10. In *Prudential Ins. Co. v. National Park Medical Ctr.*, 964 F.Supp. 1285, 1299 (E.D.Ark.1997), the court rejected the defendants argument that *Fabe* replaces the test for the "business of insurance." In *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 151 (2nd Cir.1995), the appellate court noted that *"Fabe*, although not an ERISA case, makes clear that the [Supreme Court] continues to grant considerable deference to state regulation of insurance."

Supreme Court's statements in *Royal Drug* and arguably suggests that the Court's present analysis, which involves a state insurance regulation, is not an overly broad application of the McCarran–Ferguson criteria.

The Court having thoroughly reviewed the matter, having set forth its views above, and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED:**

1. That the Motion for Summary Judgment by Plaintiffs, Community Health Partner's Inc. and Reservoir Health Services, Inc. d/b/a Center Care, is **denied**; and

2. That the Motion for Summary Judgment by Defendant, Commonwealth of Kentucky ex rel. George Nichols III, Commissioner of Insurance is **granted**.