Carol A. WARD, D.C.

v.

## ALTERNATIVE HEALTH DELIVERY SYSTEMS, INC., et al.

No. 3:98CV–18–J.

United States District Court,
W.D. Kentucky,
Louisville Division.

June 7, 1999.

John David Dyche, R. Greg Hovious, Tachau, Maddox, Hovious & Dickens, Louisville, KY, for Carol A. Ward, D.C., plaintiff.

Joseph Lee Hamilton, Brenda J. Runner, Stites & Harbison, Louisville, KY, for Alternative Health Delivery Systems, Inc., defendant.

## MEMORANDUM OPINION

JOHNSTONE, Senior District Judge.

This matter is before the Court on Defendant's Renewed Motion to Dismiss [dkt. # 60]. After reviewing the Motion and being otherwise sufficiently advised, the Court finds that Plaintiff's state law claims are pre-empted by ERISA and that Plaintiff, a health-care provider does not have standing to bring this cause of action under ERISA. Accordingly, Plaintiff's claims are dismissed pursuant to Rule 12(b)(6) for the reasons set forth in this opinion.

### Background

Plaintiff provided chiropractic health-care services to members of Defendants' health maintenance organization. Plaintiff alleges that she is owed additional monies for these services because Defendants did not pay her the full 100% of the allowable charge for treatment of plan participants. Plaintiff filed suit alleging causes of action for: 1) breach of contract; 2) violation of K.R.S. § 304.17A–171; 3) unjust enrichment; 4) breach of implied covenant of good faith and fair dealing; 5) a declaration of rights under her managed care agreement; 6) violation of K.R.S. § 367.175; and 7) claims under the Employee Retirement Income Security Act (ERISA).

The Defendants filed motions to dismiss pursuant to Rule 12(b)(6). In an Order dated April 27th, 1998 the Court stated "As Defendants' motions to dismiss incorporate matters outside the pleadings, Federal Rule of Civil Procedure 12(b) requires that they be construed as motions for summary judgment and disposed of as provided in Rule 56." The Court allowed limited discovery pursuant to Rule 56(e). The Court then denied Defendants' motions to dismiss [dkt. # 2 & 4] at that juncture to allow the parties an opportunity to address the applicability of a recent ERISA opinion from Judge McKinley. *See Community Health Partners, Inc., v. Commonwealth, of Ky.*, 14 F.Supp.2d 991 (W.D.Ky. 1998). The Defendants were permitted to renew their motions on or before October 16, 1998.

Having now conducted a more extensive review of the pleadings, the Court finds it unnecessary to go beyond the pleadings and will adjudicate the motion to dismiss pursuant to Rule 12(b) since the legal issue at the heart of the motion, preemption, can be decided on the pleadings.

### Motion To Dismiss Standard

"When a party moves to dismiss an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, both sides proceed with the expectation that the court will decide the motion on the basis of the pleadings alone unless the court notifies them otherwise." *Song v. City of Elyria,* 985 F.2d 840, 842 (6th Cir.1993). The complaint is construed in a light most favorable to the Plaintiff, and all factual allegations are accepted as true. *Sistrunk v. City Strongsville,* 99 F.3d 194, 197 (6th Cir.1996). A dismissal will only be granted if " 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544 (6th Cir.1991) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Defendant argues that Plaintiff does not have standing to bring a cause of action under ERISA and that her state law claims are preempted and therefore Plaintiff's claims should be dismissed pursuant

to Rule 12(b)(6) for failure to state a claim. As Defendant alleges Plaintiff does not have standing to bring a cause of action under ERISA, the Court will begin by first addressing jurisdictional issues before it analyzes the merits of the claims.

*Standing to Sue Under ERISA*

Pursuant to 29 U.S.C. § 1132(a)(1), only a "participant or beneficiary" may file suit for benefits under ERISA. Plaintiff claims she is a beneficiary since under the healthcare plan, benefits may be paid to either the participant or the healthcare provider. However, even though the Court must accept all well-pleaded allegations as true for purposes of a motion to dismiss, the Court cannot rely solely on Plaintiff's allegations of status as a beneficiary when determining if she has standing under ERISA. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1281 (6th Cir. 1991), *cert. dismissed*, 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Standing issues require independent inquiries because if Plaintiff does not qualify as a "beneficiary" under ERISA, her cause of action must be dismissed. *See Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir.1990) (holding that assertions in the pleadings of ERISA beneficiary status is insufficient to confer standing), *cert. denied*, 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991).

Pursuant to the provisions found in the ERISA statute, "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *See* 29 U.S.C. § 1002(8). Plaintiff alleges she is a beneficiary since the health plan states that benefits may be paid either to the participant or to the health care provider. Defendant argues that this provision in the health plan does not confer beneficiary status to the Plaintiff. Rather, Defendant argues the provision is simply a direct payment provision "allowing AHDS to pay benefits to which a member is entitled directly to a provider. The provider is not entitled to benefits, but merely receives payment for services rendered to those plan participants or beneficiaries who are eligible for benefits." [See dkt. # 21].

Plaintiff, a health care provider participating in Defendant's health care plan does not qualify as a "beneficiary" conferring her with standing to bring this cause of action under ERISA. By definition, a beneficiary is someone *entitled* to benefits under a plan. Here, Plaintiff assumes that because the health plan provides that a health care provider may be *paid* benefits directly that she is therefore *entitled* to benefits under the plan. A legal assumption such as this is not enough to confer beneficiary status. Moreover, there is nothing in the pleadings to indicate that Plaintiff has received an assignment from a plan participant or beneficiary giving her derivative standing under ERISA. Without an assignment of benefits, Plaintiff does not have standing to bring a cause of action under ERISA. *See City of Hope Nat. Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 227–28 (1st Cir.1998) (holding that when an ERISA beneficiary assigns reimbursement rights to a health care provider, that provider acquires derivative standing under ERISA and is able to sue as a "beneficiary"); *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289-90 (5th Cir. 1988) (holding that a hospital which provided health care services to a beneficiary of an ERISA plan did not have independent standing under ERISA to bring action for payment of services rendered but that it would have had standing if it were an assignee of a beneficiary). Accordingly, Plaintiff's ERISA cause of action is dismissed for lack of standing.[1]

---

1. Although Plaintiff does not have standing to bring suit under ERISA, the Court neverthe-

698

Even though Plaintiff does not have standing to bring a cause of action under ERISA, her state law claims may nevertheless be subject to ERISA preemption. Therefore, the Court must now determine whether any of Plaintiff's state law claims are preempted by ERISA.

*Plaintiff's State Law Claims & ERISA Preemption*

■ The Court begins by acknowledging the presumption against ERISA preemption. However, 29 U.S.C. § 1144(a) states that ERISA will preempt all state laws that "relate to" an employee benefit plan. The Sixth Circuit has interpreted such preemption to include "virtually all state law claims relating to an employee benefit plan...." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed*, 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). A state law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Therefore, if Plaintiff's state law claims either have a "connection with" or "reference to" an employee benefit plan, they will be subjected to ERISA preemption and dismissed.

*"Connection With" Analysis*

■ The Sixth Circuit has stated that in order to determine if a state law has a "connection with" an ERISA plan, the court should " 'look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.' " *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 939 (6th Cir.1997) (*quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)).

■ Defendant argues that Plaintiff's state law claims have a "connection with" an employee benefit plan because they "rely on the interpretation of employee benefit plans[.][I]f the service the plaintiff provides is not covered, or is partially covered under the plan, that in turn has an effect on the amount of recovery the plaintiff is seeking here." For support of this proposition, Defendant cites *Zuniga v. Blue Cross & Blue Shield of Mich.*, 52 F.3d 1395, 1402 (6th Cir.1995) (finding preemption since the plaintiff was seeking "payment of benefits under the plan for his treatment of covered patients" which "necessarily reli[ed] on the existence and interpretation of ... employee benefit plans").

An examination of Plaintiff's state law claims reveals that all these causes of action stem from a common core: the fact that Plaintiff was not paid the full 100% allowable charge for her services and treatment of covered plan participants. Apparently, Defendant's HMO contracts with various employers to provide health care services as part of their employee benefits. By statute, "any willing provider" is allowed to participate in the HMO network. As such, Plaintiff became a par-

less has jurisdiction over the remaining state law claims because: 1) it had proper removal jurisdiction over Plaintiff's ERISA claim; and 2) because Defendants properly raised ERISA preemption as a defense. *See Giles v. NYL-Care Health Plans*, 172 F.3d 332, 337 (5th Cir.1999) (stating that when "... a claim presents a federal question, it provides grounds for a district court's exercise of jurisdiction upon removal. If the plaintiff moves to remand, all the defendant has to do is demonstrate a substantial federal claim, e.g., one completely preempted by ERISA, and the court may not remand. Once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims, even if it dismisses or otherwise disposes of the federal claim....") (internal citations omitted); *see also Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1278 (6th Cir.1991) (stating that a "district court's determination that appellants lacked standing does not void its earlier determination that appellants' state law claims are preempted"), *cert. dismissed*, 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

ticipating health care provider in Defendant's HMO and provided chiropractic services to covered plan participants. Plaintiff now seeks reimbursement for services previously rendered to these covered participants. Accordingly, Plaintiff's state law claims necessarily relate to an employee benefit plan since any recovery would depend on whether the rendered services were initially covered under the employees' health plans, and whether Plaintiff has already been paid some amount for treating these covered participants. *See e.g., Cromwell v. Equicor–Equitable HCA Corp.;* 944 F.2d at 1276 (stating "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit").

In addition, Plaintiff's statutory cause of action pursuant to Kentucky Revised Statutes § 304.17A–171 provides another ground to trigger ERISA preemption as it too is sufficiently "connected with" an employee benefit plan. By specifically prohibiting health organizations from offering networks with limited chiropractic providers, the statute mandates the plan's structure. Moreover, the statute also dictates that all covered participants shall have access to the chiropractor of their choice. This too dictates a certain structure to which an employer's health care plan must succumb. As such, this claim also falls within the realm of ERISA preemption.[2] *See e.g., Texas Pharmacy Ass'n v. Prudential Ins. Co. of America,* 105 F.3d 1035 (5th Cir.) (determining that Texas statute which prohibited networks from excluding providers relates to ERISA plans because it "eliminates the choice of one method of structuring benefits" by prohibiting plans from contracting with restricted networks), *cert. denied,* — U.S. ——, 118 S.Ct. 75, 139 L.Ed.2d 34 (1997); *CIGNA Healthplan of Louisiana v. State of La.,* 82 F.3d 642 (5th Cir.) (holding that Louisiana's any-willing provider statute relates

to ERISA plans because it "requires ERISA plans to purchase benefits of a particular structure when they contract with PPO's"), *cert. denied,* 519 U.S. 964, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996).

*ERISA Preemption Savings Clause*

■ Although state laws that "relate to" ERISA plans trigger preemption, they may nonetheless be saved from preemption if they fall within the ERISA "savings clause" as a law that regulates insurance. To determine if a state law "regulates insurance," the Supreme Court devised a two-prong analysis: 1) is the law "specifically directed at the insurance industry" and 2) does the law apply to the "business of insurance" within the McCarran–Ferguson Act? *See Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The first prong of the analysis is referred to as the "common sense" approach. The Supreme Court has stated that "[a] common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Under the second prong of the analysis, a law will apply to the "business of insurance" if it 1) transfers or spreads the policyholder's risk; 2) if it is an integral part of the policy relationship between the insured and the insurer; and 3) if it is limited to entities within the insurance industry. *See Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. 2380. The Sixth Circuit has held that it is not necessary to satisfy all three McCarran–Ferguson factors in order to satisfy the second-prong of the "regulates insurance" analysis. *See Davies v. Centennial Life Ins. Co.,* 128 F.3d 934, 940 (6th Cir.1997).

---

**2.** As the Court has determined the state law claims have a "connection with" an employee benefit plan, there is no need to conduct the

"reference to" analysis to determine preemption since either prong is determinative.

Therefore, in order for K.R.S. § 304.17A–171 to fall within the ERISA savings clause as a statute that "regulates insurance" it must satisfy *both* prongs of the *Metropolitan Life* "regulates insurance" analysis: 1) that it is a law "specifically directed at the insurance industry;" and 2) that it applies to the "business of insurance" because it satisfies one or more of the McCarran–Ferguson factors.

*Is Kentucky Revised Statutes § 304.17A– 171 specifically directed at the insurance industry?*

█ Plaintiff alleges K.R.S. § 304.17A– 171, a statute which prohibits discrimination between classes of health care providers is saved from ERISA preemption because it is a statute which "regulates insurance." Plaintiff states that the statute satisfies the "common sense" prong of the two-part *Metropolitan Life* "regulates insurance" analysis since it is found in the insurance code, it affects insurance by forbidding discrimination in reimbursement of network providers and because it "affects an integral part of the relationship between the insurer and the insured." [See dkt. # 59, p. 3]. For support of this proposition, Plaintiff cites *Community Health Partners, Inc. v. Kentucky,* 14 F.Supp.2d 991 (W.D.Ky.1998). In *Community Health,* the court held that although Kentucky's "any-willing provider" statute was "related to" an employee benefit plan, it was not subject to ERISA preemption because it was saved from preemption as a law specifically directed towards the insurance industry. *Id.* at 1001. The court reasoned that since Kentucky's "any-willing provider" statute "affects specific terms of the insurance policies" and is found in the insurance code, this was "sufficient to establish that the AWP regulates insurance." *Id.* at 1002.

Plaintiff argues that K.R.S. § 304.17A– 171 is saved from preemption because like the "any-willing provider statute" at issue in *Community Health,* it too is "located within the Kentucky insurance code, ... appl[ies] to the same health benefit plans,

and ... forbid[s] forms of discrimination by plans toward providers." [See dkt. # 59, p. 2]. In response, Defendant argues the statute is not specifically aimed at the insurance industry because by definition, it includes organizations outside the industry. For support, Defendant cites *Prudential Insurance Company v. National Park Medical Center, Inc.,* 154 F.3d 812 (8th Cir.1998).

In *Prudential,* the Eighth Circuit held that Arkansas' any-willing provider statute was not saved from ERISA preemption because: 1) it was not a state law which "regulate[d] insurance;" and 2) it did not satisfy any of the McCarran–Ferguson factors as a law which applied to "the business of insurance." *See id.* Specifically, in determining that the statute was not a law which "regulated insurance," the Eighth Circuit reasoned:

> it was the intent of the General Assembly in enacting the Arkansas PPA 'to provide the opportunity of providers to participate in health benefit plans.' Furthermore, the statutory term 'health benefit plans' includes far more than just insurance or the insurance industry, because the Arkansas PPA defines that term to include 'any entity or program that provides reimbursement, including capitation, for health care services.' An act that purports to regulate 'health benefit plans' so broadly as to include employers and administrators of self-insured plans, as well as traditional insurance, simply does not fit within a common-sense view of a law directed specifically toward the insurance industry. Even if we were to accept appellants' argument that the Arkansas PPA regulates 'health care insurers,' as defined, rather than 'health benefit plans,' it is clear that the statutory term 'health care insurers' also goes well beyond the scope of the insurance industry, because it is defined by the statute to include, but not be limited to, insurance companies, hospital and medical services corporations, health maintenance organiza-

tions, preferred provider organizations, physician hospital organizations, third-party administrators, and prescription benefit management companies authorized to administer, offer, or provide health benefit plans.

.  .  .  .  .

Appellants' argument that the Arkansas PPA has been codified as part of the Arkansas insurance code is unpersuasive, because the law reaches so far beyond the insurance industry. . . . [I]t is not a law directed at the insurance industry at all, but a law directed at regulation of broadly defined health benefit plans, only some of which fall within the insurance industry.

*Id.* at 829 (internal citations omitted).

Since it is this Court's belief that this circuit will follow the Eight's Circuit's analysis due to the almost identical nature of the statutes involved, the Court will apply the Eighth Circuit's analytical framework to the facts in this case. In promulgating K.R.S. § 304.17A–171, it was the General Assembly's intent to allow any licensed chiropractor to participate as a provider and prohibit organizations from discriminating against providers when reimbursing them for their services. The term "health benefit plan" also "includes far more than just insurance or the insurance industry" as did the Arkansas statute. By definition, the term means

any hospital or medical expense policy or certificate; nonprofit hospital, medical-surgical, and health service corporation contract or certificate; provider sponsored integrated health delivery network; a self-insured plan or a plan provided by a multiple employer welfare arrangement, to the extent permitted by ERISA; health maintenance organization contract; or any health benefit plan which affects the rights of a Kentucky insured. . . .

See  K.R.S.  §§ 304.17A–170(1)  and 304.17A–005(17). In addition, the term "health care insurer" is defined as

any entity, including but not limited to insurance companies, hospital and medical services corporations, health maintenance organizations, preferred provider organizations, and physician hospital organizations, that is authorized by the state of Kentucky to offer or provide health benefit plans, policies, subscriber contracts, or any other contracts of similar nature which indemnify or compensate health care providers for the provision of health care services.

*See* K.R.S. § 304–17A–170(7). Thus, "it is [likewise] clear that [Kentucky's] statutory term 'health care insurers' [also] goes well beyond the scope of the insurance industry, because it [too] is defined by the statute to include, *but not be limited to, insurance companies*." *Prudential,* 154 F.3d at 828–29 (emphasis added). As this Court now has the benefit of the *Prudential* analysis, it must follow the Eighth Circuit's binding dictate that "[a]n act that purports to regulate 'health benefit plans' so broadly as to include employers and administrators of self-insured plans, as well as traditional insurance, simply does not fit within a common-sense view of a law directed specifically toward the insurance industry." *Prudential,* 154 F.3d at 828–29. Accordingly, as K.R.S. § 304.17A–171 is not a law that is "specifically directed towards the insurance industry," it does not fall within the ERISA savings clause as a law that "regulates" insurance and is not saved from ERISA preemption. *See also Texas Pharmacy Ass'n v. Prudential Ins. Co. of America,* 105 F.3d 1035 (5th Cir.) (holding that Texas' any-willing provider statute that prohibited networks from excluding providers was not limited to entities within insurance industry and therefore was preempted by ERISA), *cert. denied,* —— U.S. ——, 118 S.Ct. 75, 139 L.Ed.2d 34 (1997).

In finding that K.R.S. § 304.17A–171 does not satisfy the first prong of the *Metropolitan Life* analysis as a law specifically directed towards the insurance industry, it is not necessary to proceed further

and analyze the statute according to the second prong's *McCarran–Ferguson* factors. Both prongs of the "regulates insurance" analysis must be satisfied in order for the statute to fall within the savings clause. Thus, having found all of Plaintiff's state law claims preempted by ERISA and not subject to the savings clause, these causes of action are dismissed.